# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

---------------------------------------------x

DENNIS ROBBINS, on behalf of
himself and others similarly situated,

      Plaintiff,

  v.

MIDLAND CREDIT MANAGEMENT,
INC.,

      Defendant.  x

---------------------------------------------

Civil Action No.: *3:18-cv-654*

**COMPLAINT - - CLASS ACTION**

**JURY TRIAL DEMANDED**

## NATURE OF ACTION

1. This is a class action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, for the benefit of Pennsylvania consumers who have been the subject of debt collection efforts by Midland Credit Management, Inc. ("Defendant").

2. Congress enacted the FDCPA in 1977 to "eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), and in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which Congress found to have contributed "to the number of personal bankruptcies, to marital

1

instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

3.     As the Consumer Financial Protection Bureau ("CFPB")—the federal agency tasked with enforcing the FDCPA—explained, "[h]armful debt collection practices remain a significant concern today. In fact, the CFPB receives more consumer complaints about debt collection practices than about any other issue."[1]

4.     And over one-third of those complaints received by the CFPB involved debt collectors' attempts to collect debts that consumers did not owe.[2]

5.     To combat this serious problem in the debt collection industry, the FDCPA requires debt collectors to send consumers "validation notices" containing certain information about their alleged debts and consumers' rights. 15 U.S.C. § 1692g(a).

---

[1]     *See* Brief for the CFPB as Amicus Curiae, ECF No. 14, p. 2, *Hernandez v. Williams, Zinman, & Parham, P.C.*, No. 14-15672 (9th Cir. Aug. 20, 2014), http://www.ftc.gov/system/files/documents/amicus_briefs/hernandez-v.williams-zinman-parham-p.c./140821briefhernandez1.pdf

[2]     *See* Consumer Financial Protection Bureau, *Fair Debt Collection Practices Act—CFPB Annual Report 2016* at 16-17 (2016), https://www.consumerfinance.gov/data-research/research-reports/fair-debt-collection-practices-act-annual-report-2016/.

6.    A debt collector must send this notice "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," unless the required information was "contained in the initial communication or the consumer has paid the debt." *Id.*, § 1692g(a).

7.    Congress adopted "the debt validation provisions of section 1692g" to guarantee that consumers would receive "adequate notice" of their rights under the FDCPA. *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000).

8.    As noted by the CFPB and the Federal Trade Commission, the validation requirement was a "significant feature" of the law that aimed to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1070 (9th Cir. 2016) (citing S. Rep. No. 95-382, at 4 (1977)).

9.    Pertinent here, the validation notice must advise the consumer that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector. 15 U.S.C. § 1692g(a)(3).

10.    In this Circuit, "any dispute, to be effective, must be in writing." *Graziano v. Harrison*, 950 F.2d 107, 112 (3d Cir. 1991).

11.    Further, "[i]n order to comply with the requirements of section 1692g, more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter—the required notice must also be conveyed effectively to the debtor." *Wilson*, 225 F.3d at 354 (3d Cir. 2000).

12.    As a result, an initial debt collection letter sent to a consumer in Pennsylvania that would lead the least sophisticated consumer to reasonably believe that he could effectively dispute the validity of debt by making a telephone call is deceptive, and thus violates the FDCPA. *See Caprio v. Healthcare Recovery Group, LLC*, 709 F.3d 142, 152 (3d Cir. 2013) ("We therefore conclude that the Collection Letter was deceptive because it can be reasonably read to have two or more different meanings, one of which is inaccurate, i.e., that Caprio could dispute the debt by making a telephone call.").[3]

---

[3]    Internal citations and quotations are omitted.

## PARTIES

13.    Dennis Robbins ("Plaintiff") is a natural person who at all relevant times resided in Wayne County, Pennsylvania.

14.    Plaintiff is obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due, a creditor other than Defendant.

15.    Plaintiff's obligation, or alleged obligation, owed or due, or asserted to be owed or due, arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes—namely, a Synchrony Bank/Mytireshop account (the "Debt").

16.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

17.    Defendant is a consumer debt collection agency based in San Diego, California.

18.    Defendant is an entity that at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect the Debt from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

19.    Upon information and belief, at the time Defendant attempted to collect the Debt from Plaintiff, the Debt was in default, or Defendant

treated the Debt as if it was in default from the time that Defendant acquired it for collection.

20.    Defendant uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, and/or to regularly collect or attempt to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

21.    Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

## JURISDICTION AND VENUE

22.    This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

23.    Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where a substantial part of the events or omissions giving rise to the claim occurred in this district, and where Defendant conducts business in this district.

## FACTUAL ALLEGATIONS

24.    On or about October 25, 2017, Defendant sent an initial written communication to Plaintiff in connection with the collection of the Debt.

25.    A true and correct copy of the October 25, 2017 written communication is attached as Exhibit A.

26.    The October 25, 2017 communication was the first communication Plaintiff received from Defendant in connection with the Debt.

27.    Plaintiff did not receive any additional written communications from Defendant within five days of the October 25, 2017 communication.

28.    The October 25, 2017 communication advised Plaintiff that the Debt was sold to Midland Funding LLC, and that Defendant would be collecting, and servicing the Debt. *See* Ex. A.

29.    The October 25, 2017 communication then advised Plaintiff that Defendant wanted the opportunity to discuss with Plaintiff flexible payments options to resolve the Debt. *Id.*

30.    On the back of the October 25, 2017 communication, under a heading titled "Important Disclosure Information" and a subheading titled "Important Contact Information," Defendant advised Plaintiff:

> Send disputes or an instrument tendered
> as full satisfaction of a debt to:
> Attn: Consumer Support Services
> 2365 Northside Drive Suite 300
> San Diego, CA 92108
> You may also call (855) 977-1969

*Id.*

31.    The October 25, 2017 communication also advised Plaintiff:

Unless you notify MCM within thirty (30) after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid. If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment. If you request, in writing, within thirty (30) after receipt of this notice, MCM will provide you the name and address of the original creditor.

*Id.*

## CLASS ACTION ALLEGATIONS

32.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class consisting of:

All persons (a) with a Pennsylvania address, (b) to whom Midland Credit Management, Inc., (c) within one year before the date of this complaint, (d) in connection with the collection of a consumer debt, (e) mailed an initial debt collection communication not returned to Midland Credit Management, Inc. as undeliverable (f) that stated "[s]end disputes or an instrument tendered as full satisfaction of a debt to: Attn: Consumer Support Services, 2365 Northside Drive Suite 300, San Diego, CA 92108, You may also call (855) 977-1969.

33.    Excluded from the class is Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs,

successors, or assigns, and any entity in which Defendant has or had controlling interests.

34.    The proposed class satisfies Rule 23(a)(1) because, upon information and belief, it is so numerous that joinder of all members is impracticable.

35.    The exact number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery.

36.    The proposed class is ascertainable because it is defined by reference to objective criteria.

37.    In addition, and upon information and belief, the names and addresses of all members of the proposed class can be identified in business records maintained by Defendant.

38.    The proposed class satisfies Rules 23(a)(2) and 23(a)(3) because Plaintiff's claims are typical of the claims of the members of the class.

39.    To be sure, the claims of Plaintiff and all members of the class originate from the same conduct, practice and procedure on the part of Defendant, and Plaintiff possesses the same interests and has suffered the same injuries as each member of the proposed class.

40.    Plaintiff satisfies Rule 23(a)(4) because he will fairly and adequately protect the interests of the members of the class and has retained counsel experienced and competent in class action litigation.

41.    Plaintiff has no interests that are irrevocably contrary to or in conflict with the members of the class that he seeks to represent.

42.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.

43.    Furthermore, as the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the class to individually redress the wrongs done to them.

44.    There will be no extraordinary difficulty in the management of this action as a class action.

45.    Issues of law and fact common to the members of the class predominate over any questions that may affect only individual members, in that Defendant has acted on grounds generally applicable to the class. Among the issues of law and fact common to the class are:

      a.  Defendant's violations of the FDCPA as alleged herein;

    b.  Whether Defendant is a debt collector as defined by the FDCPA;

    c.  the availability of statutory penalties; and

    d.  the availability of attorneys' fees and costs.

## COUNT I: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692g(b)

46.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 45.

47.    The FDCPA at 15 U.S.C. § 1692g(b) provides, in pertinent part:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. *Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.*

(emphasis added).

48.    "For example, a collection letter will not meet the requirements of the Act where the validation notice is printed on the back and the front of the letter does not contain any reference to the notice, or one in which the validation notice is overshadowed or contradicted by accompanying messages or notices from the debt collector." *Wilson*, 225 F.3d at 355.

49.    Moreover, a collection letter "is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996).

50.    Here, on the back of the October 25, 2017 communication, under a heading titled "Important Disclosure Information" and a subheading titled "Important Contact Information," Defendant advised Plaintiff:

> <u>Send disputes or an instrument tendered</u>
> <u>as full satisfaction of a debt to</u>:
> Attn: Consumer Support Services
> 2365 Northside Drive Suite 300
> San Diego, CA 92108
> You may also call (855) 977-1969

51.    As a result, the October 25, 2017 communication can be reasonably read two have two different meanings: (1) that Plaintiff could dispute the Debt in writing by mailing his dispute to the address provided, or

(2) that Plaintiff could call telephone number (855) 977-1969 to dispute the Debt.

52.    But in this Circuit, to be effective, a dispute of a debt must be made in writing. *Graziano*, 950 F.2d at 112.

53.    As a result, Defendant's October 25, 2017 communication was deceptive because it could be reasonably read to have two or more different meanings, one of which is inaccurate—*to wit*, that Plaintiff could legally dispute the debt by making a telephone call. *See Caprio,* 709 F.3d at 152.

54.    The risk that a consumer will make a telephone call to Defendant to dispute a debt is heightened by the front of the October 25, 2017 communication, which advised Plaintiff that Defendant wanted the opportunity to discuss with Plaintiff flexible payments options to resolve the Debt.

55.    Therefore, Defendant violated 15 U.S.C. § 1692g(b)

56.    The harm suffered by Plaintiff is particularized in that the violative October 25, 2017 communication was sent to him personally, regarded his personal obligation, and failed to give him statutorily-mandated disclosures to which he was entitled.

57.    "Section 1692g furthers th[e] purpose [of protecting debtors from abusive debt collection activity] by requiring a debt collector who solicits payment from a consumer to provide that consumer with a detailed validation notice, which allows a consumer to confirm that he owes the debt sought by the collector before paying it." *Papetti v. Does 1-25*, 691 F. App'x 24, 26 (2d Cir. 2017).

58.    And the content of the October 25, 2017 communication created a material risk of harm to the concrete interest Congress was trying to protect in enacting the FDCPA. *See, e.g., Zirogiannis v. Seterus, Inc.*, No. 17-140-cv, 2017 WL 4005008, at *2 (2d Cir. Sep. 12, 2017) (concluding "that the specific procedural violation alleged in the amended complaint presents a material risk of harm to the underlying concrete interest Congress sought to protect with the FDCPA").

59.    Specifically, 15 U.S.C. § 1692g(b) provides that:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

60.    But where a debt collector implies that a dispute can be made by telephone—as Defendant did here—the least sophisticated consumer will be unaware that such an oral dispute will be ineffective in this Circuit and would then be unlikely to avail himself of the protections afforded by subsection 1692g(b) by disputing the debt in writing.

61.    The October 25, 2017 communication therefore created a material risk that Plaintiff would understand, incorrectly, that he could invoke his federal rights to dispute a debt by making a telephone call. *See Hartman v. Medicredit, Inc.*, Civil Action No. 15-1596, 2016 WL 7669858, at *3 (W.D. Pa. Dec. 20, 2016), report and recommendation adopted, 2017 WL 90383 (W.D. Pa. Jan. 10, 2017) (ruling that the plaintiff had standing because a violation of substantive FDCPA right was a concrete and particularized injury, as required under *Spokeo*); *Daubert v. Nra Grp., LLC*, Civil Action No. 3:15-CV-00718, 2016 WL 4245560, at *4 (M.D. Pa. Aug. 11, 2016) (indicating that plaintiff's allegation of a FDCPA violation presented a concrete and particularized injury following *Spokeo*)

62.    In addition, Defendant's actions invaded a specific private right created by Congress, and the invasion of said right creates the risk of real

harm. *See Church v. Accretive Health, Inc.*, 654 F. App'x 990, 995 (11th Cir. 2016).

**WHEREFORE**, Plaintiff respectfully requests relief and judgment as follows:

a.　　Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b.　　Adjudging and declaring that Defendant violated 15 U.S.C. § 1692g(b).

c.　　Awarding Plaintiff and members of the class statutory damages pursuant to 15 U.S.C. § 1692k;

d.　　Awarding members of the class any actual damages incurred, as applicable, pursuant to 15 U.S.C. § 1692k;

e.　　Awarding Plaintiff and members of the class their reasonable costs and attorneys' fees incurred in this action, including expert fees, pursuant to 15 U.S.C. § 1692k and Rule 23 of the Federal Rules of Civil Procedure;

f.　　Awarding Plaintiff and members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

g.    Awarding other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

Plaintiff is entitled to and hereby demands a trial by jury.

Dated: March 23, 2018                    Respectfully submitted,

*/s/ James L. Davidson*
James L. Davidson*
FL Bar No. 723371
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Tel: (561) 826-5477
Fax: (561) 961-5684
jdavidson@gdrlawfirm.com

Counsel for Plaintiff and the proposed class

Daniel G. Ruggiero
275 Grove Street Suite 2-400
Newton, MA 02466
Tel: (339) 237-0343
Fax: (339) 707-2808
druggieroesq@hotmail.com

Associate Counsel for Plaintiff and the proposed class

* to seek admission pro hac vice